UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SANDRA BARBER AVERY,                              Case No. 1:11-cv-848

       Plaintiff,                                  Dlott, J.
                                                                  Bowman, M.J.

      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Sandra Barber Avery filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. See 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two related claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In March 2009, Plaintiff filed applications for Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI"), alleging disability beginning in November 2007 due to both mental and physical impairments. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). In December, 2010, an evidentiary hearing was held before ALJ Robert W. Flynn, at which Plaintiff was represented by counsel. (Tr. 23-60).

At the hearing, the ALJ heard testimony from Plaintiff, and from a vocational expert ("VE"). On February 8, 2011, the ALJ denied Plaintiff's applications in a written decision. (Tr. 7-23).

The record reflects that Plaintiff was 58 years old at the time of the ALJ's decision, and has a limited education, having attended high school only through the tenth grade. (Tr. 166). Plaintiff has past relevant work as a line leader in a packaging factory. (Tr. 168, 172).

The ALJ found that Plaintiff had the following severe impairments: "diabetes mellitus; mild degenerative disc disease of the lumbar spine; mild degenerative joint disease of the bilateral hips; osteoarthritis in the right hand; history of left ovarian cyst; hyperlipidemia; hypertension; major depressive disorder; bipolar disorder; generalized anxiety disorder; and PTSD (post-traumatic stress disorder)." (Tr. 12). However, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. (Tr. 13). Instead, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of medium work, "except" as restricted by the following:

> [S]he can lift up to 50 pounds occasionally and 25 pounds frequently. In an eight-hour workday, she can sit and stand/walk six hours each. She can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. She cannot climb ladders, ropes or scaffolds. She can frequently handle and finger with the right hand. She should avoid unprotected heights and use of moving machinery. She can perform simple, routine, and repetitive tasks in a low stress environment defines [sic] as free of fast paced production requirements; involving only simple, work-related decisions; and with few, if any work place changes. She should have no contact with the public but can relate to co-workers and supervisors on an occasional basis.

(Tr. 14).

2

Based upon the testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work, but determined that she had acquired work skills from that work that "are transferable to other occupations with jobs existing in significant numbers in the national economy." (Tr. 20). Therefore, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Regulations, and was not entitled to DIB. (Tr. 21).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination as of February 8, 2011.[1] On appeal to this Court, Plaintiff first argues that the ALJ erred by finding that Plaintiff was capable of "medium" work, rather than "light" work. Second, Plaintiff argues that the ALJ erred by finding that she possesses transferable skills. Based upon her age and limited education, and assuming that this Court finds in Plaintiff's favor on both assertions of error, Plaintiff reasons that 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.02 would have mandated a finding that she was disabled. As discussed below, the Court finds no error and therefore recommends that the Commissioner's decision be affirmed.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its

---

[1] Plaintiff points out that, in addition to pursuing an appeal of the decision at issue in this case, she filed a new application for benefits within a week of the ALJ's unfavorable decision. Plaintiff's second application was successful, resulting in an award of benefits retroactive to February 9, 2011. However, Plaintiff's subsequent success has no relevance to the issue presented in this case - whether the ALJ's first decision was supported by substantial evidence in the record.

3

statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

4

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Errors

Plaintiff's assertions of error both relate to the fifth step of the sequential analysis.

### 1. Light versus Medium Work

The Social Security Administration has promulgated Medical Vocational Guidelines ("grids") that define the "sedentary," "light," "medium," and "heavy" exertional levels used at the final step of the sequential disability analysis. *See* 20 C.F.R. §404.1569. "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003)(citing *Hurt v. Sec. of Health & Human Servs.*, 816 F.2d 1141, 1142-43 (6th Cir. 1987)(*per curiam*)). On the other hand, when a claimant's impairments do not neatly match up precisely with a specific rule, then the grid rules do not strictly apply, but instead merely provide a general framework for evaluating a claimant's capacity to perform work. *Id.*

5

In this case, Plaintiff argues that the ALJ erred by determining that Plaintiff could perform the "medium" level of work, rather than restricting her to "light" work.  The ALJ specifically found that Plaintiff cannot do a full range of medium work (Tr. 21), and instead limited the range of medium work she could perform by including a number of non-exertional limitations.

Notably, Plaintiff does not disagree with the ALJ's findings that she can lift and carry up to 50 pounds occasionally and 25 pounds frequently, and that she is able to sit, stand, and walk up to six hours in an eight-hour day.  Social Security Ruling (SSR) 83-10 defines medium work as requiring the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  The same ruling explains that a "full range" of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."  *See* 20 C.F.R. §404.1567(c). Thus, based solely on exertional criteria, the ALJ correctly described Plaintiff's abilities as falling within the "medium" exertional level.

However, Plaintiff argues that the ALJ has included so many critical non-exertional limitations that "[i]n reality…the ALJ's RFC describes work that is done at the light exertional level."  (Doc. 12 at 5).  At its heart, Plaintiff's argument confuses exertional limitations (the amount of weight a claimant can lift, and the amount of sitting/standing/walking) with non-exertional restrictions.

### a.  Plaintiff's Postural Limitations

Plaintiff asserts that the ALJ's determination that Plaintiff can perform only "occasional" stooping and crouching is incompatible with his determination that she can perform medium level work.  Plaintiff argues that one "must" be able to perform

6

"frequent stooping and crouching" in order to fall within the "medium" exertional level, and that restricting a claimant to "occasional" stooping and crouching translates to a restriction to light work. In support, Plaintiff cites portions of SSR 83-10 and SSR 83-14; both rulings state that medium work requires "frequent" bending, stooping, and crouching.

Contrary to Plaintiff's argument, the complete text of SSR 83-10 does not indicate that a claimant must be able to do "frequent" bending, stooping, and crouching even for a *restricted* range of medium work. Instead, that ruling states that "[t]he considerable lifting required for the *full* range of medium work *usually* requires frequent bending-stooping." (*Id.,* emphasis added). Similarly, SSR 83-14 explains that frequent stooping and crouching are required only for the "full" range of medium work. Here, the ALJ expressly stated that Plaintiff could *not* perform the "full range" of medium work, and explained in a hypothetical provided to the vocational expert that Plaintiff could perform work at the medium level only to the extent that it required not more than "occasional" stooping and crouching. *Accord, Bumgardner v. Sec. of Health and Human Servs.*, 917 F.2d 24 (6th Cir. 1990)(Table, text available in Westlaw)(affirming non-disability decision where claimant had the exertional ability to perform medium work, rejecting claimant's argument that SSR 83-10 mandates a restriction to light work based upon ability to stoop only "occasionally").

Plaintiff complains that the ALJ did not use the precise words, "restricted range," when describing the range of medium level work that Plaintiff could perform. Nonetheless, the ALJ's opinion plainly states that "the claimant's additional limitations do not allow the claimant to perform the full range of medium work." (Tr. 21). The law

7

does not require an ALJ to use any specific adjectives, such as "restricted" or "limited," when the analysis and record are as clear as they are in this case. The ALJ expressly stated that Plaintiff's capacity for medium work was limited by non-exertional limitations, and that he considered the medical-vocational guidelines for medium work only as a general framework. The transcript of the hearing and the written opinion make abundantly clear that the ALJ relied heavily upon the testimony provided by the vocational expert to conclude that the Plaintiff was not disabled based upon her unique set of non-exertional limitations.

In a variation of the same argument, Plaintiff contends that Ruling 83-12 mandates a more detailed analysis than that provided by the ALJ of "the extent of any erosion of the occupational base and…its significance," including whether the erosion restricts the claimant to less than the defined level "only slightly" or "significantly." (Doc. 17 at 1-2, citing SSR 83-12). Plaintiff claims that merely by referring to "medium" work and describing Plaintiff's non-exertional limitations, the ALJ failed to comply with SSR 83-12. However, Ruling 83-12 is applicable "only when evaluating *exertional* limitations within a range of work or between ranges of work," and "expressly states that its purpose is to clarify policies where the individual has *only* exertional limitations." *Bumgardne*r, 917 F.2d 24 at *5. Thus, SSR 83-12 has no application to this case. As in *Bumgardner* and in *Wright v. Massanari*, *supra*, Plaintiff's argument "misapprehends the analysis that is applicable to her situation." 321 F.3d at 615. Plaintiff seeks to use the fact that she is not capable of doing all of the jobs in the medium work category due to her nonexertional limitations (primarily postural limitations) to drop her category level down a notch. However, there is no legal support for the argument that Plaintiff's

8

*nonexertional* limitations required the ALJ to decrease the level of her *exertional* capacity. *See id.* at 616 ("Wright…wants to use her nonexertional limitation to place her in a category on the grid that will mandate a finding of disability. We find no justification for Wright's position.")

To the extent that SSR 83-12 might somehow be construed to have any application, the ALJ followed the appropriate procedure by consulting a vocational expert to determine the size of the remaining occupational base, including specific jobs that Plaintiff could perform and the number of those jobs available both regionally and nationally. *See id.*; *Bumgardner*, 917 F.2d 24 at *4 (decision upheld based upon ALJ's use of medium exertional level as framework, combined with vocational expert testimony concerning the plaintiff's non-exertional limitations); *see also Cooper v. Astrue*, 2011 WL1118514 at *12 (S.D. Ohio, Jan. 25, 2011)(R&R adopted at 2011 WL 1125185)(affirming based upon VE testimony, noting that although SSR 83-12 "permits" a finding of a lower exertional category "where a claimant's exertional capacity is significantly reduced, it does not require it.").

More to the point, the ALJ correctly cited Ruling 83-15, which explains that "because of the lifting required for most medium…jobs a person must be able to stoop frequently…[such that] the inability to do so would substantially affect the more strenuous portion of the occupational base," as well as SSR 83-14 [2] (Tr. 21). Therefore, SSR 83-15 confirms that Plaintiff's postural limitations impact only the "most strenuous portion" of medium level jobs. Here, the VE offered unequivocal testimony that despite Plaintiff's ability to stoop and crouch only "occasionally," Plaintiff

---

[2] SSR 83-14 similarly states that frequent stooping and crouching are required for "most" (but not all) "medium, heavy, and very heavy jobs."

nevertheless could perform a significant number of medium level jobs in the national and regional economy. (Tr. 57-58).

### b. Plaintiff's alleged hand impairment

Buried in a footnote in Plaintiff's statement of errors, Plaintiff describes as "a curious finding" the ALJ's determination that Plaintiff can "frequently handle and finger with the right hand," given medical records that reflect severe arthritic changes in that hand. However, Plaintiff states in the same footnote that "*it is not necessary to address this anomaly* since the ALJ's overall RFC supports an award of benefits." (Doc. 12 at 4, n.2, emphasis added). Taking Plaintiff at her word, Defendant does not address the issue in its responsive memorandum.

In her reply memorandum, Plaintiff briefly builds on the argument by suggesting that Plaintiff's "inability to frequently use her right hand" further supports a restriction to light work. (Doc. 17 at 1). In a second sentence, she adds that "[t]he ALJ just plain mischaracterized Ms. Aery's ability to use her right hand, despite finding that she suffered from the severe medically determinable impairment of osteoarthritis in the right hand." (Doc. 17 at 2).

Based upon Plaintiff's original footnote and the brevity of the argument, the undersigned finds no need to address this issue. In the alternative, the Court reiterates that no legal error exists in the ALJ's determination that Plaintiff could perform a limited range of medium level work.

To the extent that a reviewing court would disagree concerning the need to address the factual discrepancy, the undersigned finds no reversible error. Not only is Plaintiff's argument arguably waived, but Plaintiff fails to demonstrate that any error in

the RFC determination that Plaintiff retained the ability to "frequently handle and finger with the right hand," would have impacted the number of jobs that the VE testified that she could perform.

In addition, the ALJ determined that Plaintiff experiences pain from osteoarthritis in her right thumb, but he also explained that he found numerous discrepancies in the record that negatively affected Plaintiff's credibility concerning the extent of limitations from that pain. (Tr. 18). Plaintiff does not challenge the ALJ's credibility findings, which are well-supported in the record.

Relevant to Plaintiff's right thumb impairment, the ALJ noted:

> [The claimant] testified that she is able to perform all household chores, laundry, ironing, and grocery shopping without any significant problems or help. …[T]he claimant testified that she was able to crochet, attend activities at a social center, and engage in a wide range of activities of daily living. The record shows that since her alleged onset date she has thrown a surprise party of her roommate, prepared Thanksgiving dinner for her roommate's family, and held a fish fry. She indicated that she did all of the cooking for these occasions. The claimant testified that she is able to crochet for about an hour before she begins having pain. She alleged problems gripping due to her right thumb but said that she does not drop things and reported that she can button buttons and zip zippers. The claimant has not been prescribed any narcotic based pain relieving medications…[and] is able to get relief with over-the-counter Ibuprofen, aspirin, and Tylenol.

(Tr. 18). In sum, the record reflects that even though the ALJ found that Plaintiff suffers from severe osteoarthritis in her right thumb, her ability to use her hands and fingers was not seriously impaired.

### 2. Readily Transferable Skills

In Plaintiff's second assertion of error, she argues that the ALJ erred by finding that Plaintiff possesses the skill of "supervision including training, hiring, discipline, firing, and day-to-day assignment of tasks." (*See* Tr. 20). The vocational expert noted

11

that Plaintiff had been a "line leader" at a factory for 11 years, from 1995-2006, but Plaintiff argues in this appeal that the record reflects that she worked in that position for only 2 years, from 1995-1996. Plaintiff argues that the VE must have misread the dates. However, the portion of the record on which Plaintiff relies (Plaintiff's self-reported work history) agrees with the 11 year time period used by the ALJ. (*See* Tr. 168, 172, 247). In any event, Plaintiff fails to explain how the alleged discrepancy in dates had any impact on the outcome of this case.

Aside from the issue concerning the dates of her employment, Plaintiff's primary claim is that the ALJ erred in finding that Plaintiff had any transferable supervisory skills at all. With respect to the line leader position, the VE testified that "the skill level there may be a bit high. There's not really a line leader. That's a supervisor job title. But she was doing some supervision. She was doing discipline. Involved in hiring decisions, according to 3E. And also, involved in terminating employees." (Tr. 55-56).

When the ALJ asked whether Plaintiff had acquired any transferable skills the VE initially theorized that there "*could be* some transferable skills to…similar *light* positions." (Tr. 56, italics added). However, the VE eventually testified "I think, no," to the inquiry of whether Plaintiff had transferable skills. (Tr. 56). In addition, because the ALJ imposed a mental limitation that Plaintiff could relate to co-workers and supervisors on only an "occasional" basis, (Tr. 57), the VE explained that Plaintiff could no longer perform the line leader job, (*see id.*), which Plaintiff argues also would preclude the transferability of any supervisory skills to any other position.

The undersigned agrees that the record reflects an error in the ALJ's determination that Plaintiff has transferable work skills. However, the error is harmless

on the record presented. Citing Rule 203.13 as the appropriate "framework" to be used, the ALJ concluded that Plaintiff was not disabled. (Tr. 21). Rule 203.13 applies when the claimant is of advanced age, with a limited education, and has transferable skills but is limited to medium level work. Although the grid rules may be applied only as a framework due to Plaintiff's non-exertional limitations, Rule 203.12 and not Rule 203.13 applies to individuals of advanced age, with a limited education, with no transferable skills. Like Rule 203.13, Rule 203.12 also mandates a finding of not disabled. As stated, Plaintiff advocates for the application of Rule 202.02, but that rule is inapplicable because it applies only where the claimant is limited to light work. As previously discussed, I find no error in the ALJ's conclusion that Plaintiff can perform a restricted range of unskilled medium work.

Just as the VE testified that Plaintiff did not have any easily transferable skills from the line leader position, he testified that Plaintiff could perform a number of *unskilled* medium-level jobs, such as hand packager, cleaner, and kitchen helper. (Tr. 57-58). None of the jobs that the VE testified that Plaintiff could perform, which formed the basis for the ALJ's non-disability determination, required the transferability of skills. The testimony of the VE confirms that substantial evidence exists to uphold the Commissioner's decision. *See Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *accord Coulter v. Comm'r of Soc. Sec.,* 24 Fed. Appx. 305 (6th Cir. 2001)(affirming where claimant's abilities fell between regulatory guidelines for exertional limitations, but ALJ relied upon vocational expert testimony).

### III.  Conclusion and Recommendation

For the reasons discussed, the ALJ committed no reversible error.  His finding of non-disability is supported by substantial evidence in the record as a whole; therefore, IT IS RECOMMENDED THAT the Commissioner's decision to deny Plaintiff DIB and SSI benefits be AFFIRMED, and that this case be CLOSED.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SANDRA BARBER AVERY,                                    Case No. 1:11-cv-848

      Plaintiff,                                                      Dlott, J.
                                                                                             Bowman, M.J.

      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15